```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHERONDA LOYTOA WASHINGTON,

                        Plaintiff,

v.                                                      5:14-CV-1479
                                                        (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____
```

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OLINSKY LAW GROUP<br>  Counsel for Plaintiff<br>One Park Place<br>300 South Stat St., Ste. 420<br>Syracuse, NY 13202 | HOWARD D. OLINSKY, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | TOMASINA DIGRIGOLI, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## **REPORT and RECOMMENDATION**

This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 19.) This case has proceeded in accordance with General Order 18.

Currently before the Court, in this Social Security action filed by Sheronda Loytoa Washington ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties'

cross-motions for judgment on the pleadings. (Dkt. Nos. 13, 17.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

I.   RELEVANT BACKGROUND

   A.   Factual Background

Plaintiff was born on November 7, 1977. (T. 270.) She received a GED. (T. 274.) Generally, Plaintiff's alleged disability consists of posttraumatic stress disorder ("PTSD"), depression, anxiety, and bipolar disorder. (T. 273.) Her alleged disability onset date is January 25, 2010. (T. 88.) Her date last insured is December 31, 2014. (*Id.*) She previously worked as a receptionist. (T. 274.)

   B.   Procedural History

On October 4, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 24.) Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On November 14, 2012, Plaintiff appeared before the ALJ, Michael A. Rodriguez. (T. 40-86.) On March 7, 2013, ALJ Rodriguez issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 21-39.) On October 3, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.   The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 26-34.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2014 and Plaintiff had not engaged in substantial gainful activity since January 15, 2010. (T. 26.) Second, the ALJ found that Plaintiff had the severe impairments of bipolar disorder, an anxiety disorder, depression, polysubstance abuse and PTSD. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 27-29.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of exertional requirements; however, Plaintiff was capable of performing low stress work, which the ALJ defined as performing simple, unskilled one to two step tasks requiring no contact with the public. (T. 29.) Further, Plaintiff was limited to occasional work-related interaction with her co-workers and occasional work setting changes. (*Id.*) Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 33-34.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence. (Dkt. No. 13 15-18 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues the ALJ failed to properly evaluate the medical opinion of Amy Trousdale, Licensed Masters Social Worker ("LMSW") and the ALJ's credibility analysis was not

3

supported by substantial evidence. Second, Plaintiff argues the ALJ erred in his step three analysis, or in the alternative his step five analysis. (*Id.* at 18-21.) Third, and lastly, Plaintiff argues the ALJ erred in his step five determination because he failed to include the limitations imposed by Ms. Trousdale which would impose additional non-exertional limitations and require the testimony of a vocational expert ("VE"). (*Id.* at 21.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ's RFC was supported by substantial evidence. (Dkt. No. 17 at 6-11 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly found that Plaintiff's impairment did not meet or equal a Listing. (*Id.* at 11-13.) Third, and lastly, Defendant argues the ALJ properly determined at step five that Plaintiff was not disabled. (*Id.* at 13-17.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct

4

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R.

§§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Amy Trousdale, LMSW

Although a social worker may be a treating health care provider, not all treating health care providers are "treating sources" under the applicable Social Security Regulations. A "treating source" is defined as the plaintiff's "own physician, psychologist, or other acceptable medical source who provides [plaintiff], or has provided [plaintiff], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [plaintiff]." 20 C.F.R. §§ 404.1502, 416.902. There are five categories of "acceptable medical sources." *Id.* at §§ 404.1513(a), 416.913(a). Social workers are not included within those categories. Social workers are listed

6

among the "other medical sources," whose opinion may be considered as to the severity of a plaintiff's impairment and ability to work, but their conclusions are not entitled to any special weight. *Id.* at §§ 404.1513(d)(1), 416.913(d)(1).

An ALJ may consider the opinions of "other sources" in making his overall assessment of a plaintiff's impairments and residual abilities; however, those opinions do not demand the same deference as those of a treating physician." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008); s*ee Mongeur v. Heckler,* 722 F.2d 1033, 1039 n. 2 (2d Cir.1983) ("the diagnosis of a nurse practitioner should not be given the extra weight accorded a treating physician.").

Plaintiff received mental health treatment from Ms. Trousdale, LMSW. In January 2012, Ms. Trousdale completed a mental capacity questionnaire. (T. 419-421.) Therein, Ms. Trousdale opined Plaintiff had no limitations in her ability to: remember locations and work-like procedures; understand and remember very short and simple instructions; and understand and remember detailed instructions. (T. 419.) She opined Plaintiff had no limitations in her ability to: carry out very short and simple instructions; carry out detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and sustain an ordinary routine without special supervision. (*Id.*) Ms. Trousdale opined Plaintiff had an extreme limitation in her ability to maintain attention and concentration for extended periods. (*Id.*)[1] Ms. Trousdale opined Plaintiff had marked limitations in her ability to: work in coordination with or in proximity to others without being distracted by them; complete a normal workday without interruptions from psychologically based symptoms;

---

[1] The assessment defined "Extreme" as: "There is a major limitation in this area. There is no useful ability to function in this area." Marked was defined as: "There is serious limitation in this area. The individual cannot generally perform satisfactorily in this area."

complete a normal workweek without interruptions from psychologically based symptoms; and perform at a consistent pace with standard number and length of rest periods. (T. 420.) Ms. Trousdale opined Plaintiff had marked limitations in her ability to interact appropriately with the general public. (*Id.*) However, Ms. Trousdale opined Plaintiff would have no limitations in her ability to: ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (*Id.*)

The ALJ provided Ms. Trousdale's assessment "little weight." (T. 33.) The ALJ reasoned Ms. Trousdale's treatment notations indicated Plaintiff symptoms increased when she was not compliant with medication and Plaintiff was stable when she did comply. (*Id.*)

Plaintiff argues the ALJ failed to provide sufficient rationale for affording little weight to the opinion of Ms. Trousdale. (Dkt. No. 13 at 15-17 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues the ALJ failed to comply with SSR 96-2p. (*Id.*)[2] SSR 96-2p provides guidance on affording controlling weight to treating source medical opinions. Ms. Trousdale, however, is not an acceptable medical source and therefore, her opinion cannot be afforded controlling weight. The treating physician rule does not extend to the opinions of non-physician medical sources such as physician's assistants, nurse practitioners and social workers. Although an ALJ must consider the opinions of such professionals who provide treatment to plaintiffs pursuant to SSR 06-3p, an ALJ is not

---

[2] Plaintiff cites to SSR 96-3p in her brief; however, SSR 96-3p provides guidance on making a credibility determination, this appears to be a typo.

8

required to give controlling weight to such opinions under the treating physician doctrine. *Genier v. Astrue,* 2008 WL 4820509 at *3 (2d Cir.2008) (A physician's assistant and a nurse practitioner do not constitute 'acceptable medical sources' under the treating physician rule pursuant to Social Security Ruling 06–3p (SSR 06–3p) (effective date August 9, 2006), and therefore, their assessments do not warrant the same deference as a physician's opinion."). The ALJ considered Ms. Trousdale's opinion and assigned her opinion little weight. Ms. Trousdale was not an acceptable medical source; therefore, the treating physician rule did not apply to her opinion and the ALJ did not err in failing to apply it.

The ALJ properly evaluated the opinion of Ms. Trousdale. Besides her argument that Ms. Trousdale's opinion be given controlling weight, Plaintiff makes the conclusory argument that Ms. Trousdale's opinion is supported and consistent with the record. (Dkt. No. 13 at 17 [Pl.'s Mem. of Law].) However, Plaintiff fails to cite to the record or provide evidence form the record to support her argument.

Plaintiff also argues the ALJ erred in relying on the medical opinion of a consultative examiner, Christina Caldwell, Psy.D. (Dkt. No. 13 at 16 [Pl.'s Mem. of Law].) However, an ALJ "is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants," particularly where the consultant's opinion is supported by the weight of the evidence. *Garrison v. Comm'r of Soc. Sec.*, No. 08-CV-1005, 2010 WL 2776978 at *4 (N.D.N.Y. June 7, 2010).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§

404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b) (6), 416.913(c), and 416.927(f)(2); *see also Leach ex. Rel. Murray v. Barnhart,* No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y.Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."). Therefore, the ALJ did not err in relying on the opinion of Dr. Caldwell.

### B. Credibility

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (*quoting Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an

>individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id., see* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii). Further, "[i]t is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (citing *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (T. 33.) Plaintiff argues the ALJ failed to "cite to the record or evidence contradicting Plaintiff's subjective complaints," but instead simply concluded Plaintiff's statements were not credible. (Dkt. No. 13 at 17 [Pl.'s Mem. of Law].) Plaintiff further argues the ALJ erred in his reliance on notations of Plaintiff's "stability" while complaint with medication. (*Id.* at 18.)

In making his credibility determination the ALJ properly relied on the objective medical evidence in the record and Plaintiff's testimony regarding her activities and medical treatment. Contrary to Plaintiff's assertion, the ALJ's credibility decision was not boilerplate. The ALJ's decision contains a thorough and complete review of the

objective medical evidence. (T. 30-33.) The ALJ provided a discussion of the factors outlined in the Regulations for making a credibility determination and applied those factors in his analysis. The ALJ summarized Plaintiff's testimony and relied on her accounts of her daily activities. The ALJ also relied on Plaintiff's testimony that she could perform activities of daily living and testimony regarding her medical treatment and use of medication. (T. 30.) For example, Plaintiff testified she was able to perform volunteer work as a crossing guard. (*Id.*) Here, the ALJ provided a detailed discussion of a plaintiff's credibility "explicitly and with sufficient specificity to enable the court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270. Further, it is the function of the ALJ, not the reviewing courts to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the plaintiff. *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1982). The ALJ's credibility analysis and determination where not boilerplate as Plaintiff argues. The ALJ adhered to the Regulatory factors and properly applied them, therefore, remand is not recommended.

**C.     Listing 12.04**

At step three of the sequential process the ALJ must determine whether Plaintiff's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1526, 416.920(d), 416.926) ("the Listings"). If Plaintiff's impairments or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement, Plaintiff is disabled. *Id.* at §§ 404.1509,

416.909. If Plaintiff does not meet or equal a Listing, the analysis proceeds to the next step.

Listings § 12.04 is met when the requirements in both paragraphs A and B are satisfied, or when the requirements of paragraph C are satisfied. It is not contested that Plaintiff's mental impairments of satisfy the paragraph A requirements of Listing § 12.04; therefore, for ease of analysis, this Court will focus on the requirements of paragraphs B and C.

To satisfy the paragraph B of Listing § 12.04 a plaintiff must have a mental impairment that results in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpart P, Appendix 1.

To satisfy the paragraph C criteria of Listing § 12.04, the mental impairment must have existed for at least two years and cause more than a minimal limitation on plaintiff's ability to perform basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: 1) repeated episodes of decompensation, each of extended duration; or, 2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or, 3) current history of one or more years inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. *Id.*

Here, the ALJ determined at step three that Plaintiff's impairments did not meet or equal a Listing. (T. 27-29.) The ALJ specifically evaluated Plaintiff's impairments under Listings §§ 12.04 and 12.06. (*Id.*) The ALJ concluded Plaintiff had mild restrictions in activities of daily living; moderate difficulties in social functioning; and moderate difficulties in concentration, persistence and pace. (T. 28.) The ALJ concluded Plaintiff had no episodes of decompensation that have been for an extended period of time. (*Id.*)

Plaintiff argues she satisfied the criteria of Listing § 12.04. (Dkt. No. 13 at 18-20 [Pl.'s Mem. of Law].) Plaintiff argues she had episodes of decompensation which would satisfy the criteria of paragraph B or C. (*Id.*) Specifically, Plaintiff relies on her outpatient hospital emergency room visits as evidence that she satisfies criteria B or C of Listing § 12.04.

On March 5, 2010, Plaintiff received emergency mental health treatment from St. Joseph's Hospital Health Center. (T. 343.) A concerned family member called the police when Plaintiff experienced hallucinations after using cannabis and formaldehyde. (T. 347.) At that time Plaintiff was not receiving mental health treatment nor was Plaintiff taking medication. (T. 347.) Plaintiff was discharged the same day she was admitted. At the time of discharge, a mental status exam was "normal." (T. 353.) Plaintiff was diagnosed with "drug induced psychotic disorder with hallucinations" and "unspecified episodic mood disorder." (T. 354.)

On March 10, 2010, Plaintiff received emergency mental health treatment from Community General Hospital. (T. 356.) Plaintiff presented to the emergency room with alcohol intoxication and a possible overdose. (*Id.*) Plaintiff stated she was "depressed

from a bad day;" however, she indicated she was thinking clearly and "just want[ed] to go home." (*Id.*)  Again, Plaintiff was discharged the same day as admittance.

On September 1, 2012, Plaintiff received emergency mental health treatment from Crouse Hospital and was transferred to St. Joseph's Hospital Health Center.  (T. 527.)  Plaintiff presented as upset with notations of suspicion and paranoia; however, her memory, orientation, attention and concentration were intact and good.  (T. 528.)  The provider noted Plaintiff had "a personality style that makes it difficult for other to work with her, she tends to want immediate gratification and immediate results."  (T. 528.)  Plaintiff was discharged the same day as admittance.  (T. 529.)

On September 6, 2012, Plaintiff received emergency mental health treatment from St. Joseph's Hospital Health Center.  (T. 512, 521.)  Plaintiff was treated and diagnosed with overdose and personality disorder.  (*Id.*)  Plaintiff was discharged the same day as admittance.  (T. 512, 521.)

The Listings define "episodes of decompensation" as:

> exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.
>     The term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. If you have experienced more frequent episodes of shorter duration or less frequent episodes of longer duration, we must use judgment to determine

15

> if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence.

20 C.F.R. Part 404, Subpart P, Appendix 1, Part A 12.00(C)(4).

Defendant argues Plaintiff's hospitalization do not meet the criteria of Listing 12.04(C)(4) because the episodes did not last at least two weeks. (Dkt. No. 17 at 13 [Def.'s Mem. of Law].) Plaintiff acknowledges her hospitalizations did not involve inpatient stays; however, Plaintiff argues they nonetheless meet the criteria because they spanned at least a week and involved "multiple" instances of hallucinations or overdose which would satisfy criteria in Paragraph B. (Dkt. No. 13 at 20 [Pl.'s Mem. of Law].) Plaintiff's argument must fail.

To be sure, a plaintiff's period of hospitalization does not need to "fit squarely with the definitions" of the Listing. *Bohn v. Comm'r of Soc. Sec.,* No. 7:10-CV-1078, 2012 WL 1048607, at *9 (N.D.N.Y. Mar. 5, 2012) *report and recommendation adopted,* No. 7:10-CV-1078, 2012 WL 1048867 (N.D.N.Y. Mar. 28, 2012) ("evidence of hospitalization, though highly relevant, is not necessarily required for a finding of decompensation, nor must any hospitalization last for two weeks in order to evidence such an episode."); *See Duell v. Astrue,* No.8:08–CV–9, 2010 WL 87298 at *7 and n. 9 (N.D.N.Y. Jan.5, 2010) (noting that "[e]pisodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace.") (quoting *Kohler v. Astrue,* 546 F.3d 260, 268–69 (2d Cir.2008)) (internal quotation

omitted).  However, here, the ALJ properly concluded that Plaintiff's emergency treatment did not meet or equal the criteria of paragraph B or C.

Plaintiff sought emergency mental health treatment twice within a week's span in 2010 and twice within a week's span in 2012.  (T. 343, 356, 512, 527.) The record simply does not provide evidence of *three* episodes within one year each lasting for at *least* two weeks as required by the Listing.  20 C.F.R. Part 404, Subpart P, Appendix 1, Part A 12.00(C)(4) (emphasis added).  Although Courts have held treatment need not precisely match the duration requirements of Listing 12.04, here, Plaintiff's emergency treatment falls well outside any logically acceptable parameters.  Further, the ALJ provided evidence from the record to support his conclusion that Plaintiff had not experienced episodes of decompensation.  The ALJ discussed Plaintiff's emergency mental health treatment and relied on the medical opinion evidence of State agency medical consultant, E. Kamin, Ph.D.  (T. 28-29.)  Therefore, the ALJ did not err in his step three determination.

### C. The ALJ's Step Five Determination

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform.  *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).  The second part of this process is generally satisfied by referring to the applicable

rule of the Medical–Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

Here, the ALJ determined that given Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 34.) In making his determination, the ALJ reasoned that under SSR 85-15, Plaintiff's non-exertional mental impairments had little or no effect on the occupational base of unskilled work at all exertional levels. (*Id.*)

Plaintiff essentially argues the ALJ's step five determination was in error because he failed to properly assess Ms. Trousdale's opinion which would require the finding of additional mental limitations in his mental RFC determination and require the testimony of a vocational expert ("VE"). (Dkt. No. 13 at 21 [Pl.'s Mem. of Law].)[3] Plaintiff's three sentence argument simply alleges the ALJ erred at step five, Ms. Trousdale provided more extreme mental limitations than assessed by the ALJ, and the ALJ failed to consult with a VE. (*Id.*)

However, as discussed in Part IV.A., the ALJ did not err in his evaluation of the medical and other opinion evidence in the record. Specifically, the ALJ did not err in his evaluation of Ms. Trousdale's opinion; therefore, he was not

---

[3] In her second argument Plaintiff also asserts that based on the mental limitations opined by Ms. Trousdale, Plaintiff would be unable to meet the basic mental demands of even unskilled work. (Dkt. No. 13 at 20 [Pl.'s Mem. of Law].) However, for the reasons stated herein, the ALJ properly evaluated the opinion evidence provided by Ms. Trousdale and substantial evidence supported his determination to afford her opinion "little weight." Plaintiff does not argue the ALJ's RFC determination would preclude all unskilled work.

18

required to include additional mental limitations in his RFC determination. Plaintiff does not argue that the ALJ's RFC determination limiting Plaintiff to simple, unskilled work with no contact with the public, only occasional work setting changes, and only occasional work-related interaction with co-workers required testimony from a VE in order to make a step five determination. (Dkt. No. 13 at 21 [Pl.'s Mem. of Law].) In other words, Plaintiff essentially argues that an error at step five would only arise had the ALJ's RFC included additional non-exertional limitations imposed by Ms. Trousdale. Because the ALJ afforded Ms. Trousdale's opinion proper weight and his RFC determination was supported by substantial evidence the Plaintiff's argument fails.

**ACCORDINGLY**, based on the findings above, it is

    **RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

    Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:    February 12, 2016

                                                      William B. Mitchell Carter
                                                    U.S. Magistrate Judge